Arthur DOTY, Plaintiff, Appellant,

v.

Richard SEWALL, et al.,
Defendants, Appellees.

No. 85–1428.

United States Court of Appeals,
First Circuit.

Argued Oct. 9, 1985.

Decided Feb. 10, 1986.

Mark David Stern, with whom Law Office of Mark D. Stern, P.C., was on brief, for plaintiff, appellant.

Gabriel O. Dumont, Jr., with whom Grady, Dumont & Dwyer, was on brief, for defendants, appellees Richard Sewall, Teamsters Local No. 42 and Frank Salemme.

Alan J. McDonald, with whom McDonald and Noonan, was on brief, for defendants, appellees Teamsters Local Union No. 49, Michael Platanites and Joseph Baxter.

Before COFFIN and BREYER, Circuit Judges, HILL,* Senior District Judge.

COFFIN, Circuit Judge.

This appeal requires us to determine the appropriate statute of limitations applicable to a "bill of rights" action brought by a union activist against two local unions under Title I of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 411–412.

* Of the Central District of California, sitting by    designation.

Appellant Arthur Doty brought suit against two local affiliates of the International Brotherhood of Teamsters, Drivers, Chauffeurs, Warehouse Employees and Helpers (the Teamsters), and certain officers of those organizations, charging that they improperly denied him membership in the two locals. The district court granted summary judgment for the defendants on the ground that the action was untimely, not having been brought within six months of the accrual of the claims. The court felt compelled by *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), to apply the six month statute of limitations prescribed for the filing of unfair labor practice charges under section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b).

Two other courts of appeals have followed the same approach in LMRDA cases. *Davis v. United Automobile, Aerospace and Agriculture Implement Workers of America*, 765 F.2d 1510 (11th Cir.1985), *petition for cert. filed*, 54 U.S.L.W. 3376 (U.S. Dec. 3, 1985) (No. 85–844); *Local 1397 v. Steelworkers*, 748 F.2d 180 (3d Cir. 1984). Our own scrutiny of the interests and policies at stake in this case convinces us that they so differ from those in *Del-Costello* that its underlying approach mandates adherence in this case to the normal mode of applying "the most closely analogous statute of limitations under state law." 462 U.S. at 158, 103 S.Ct. at 2287.[1] We therefore hold that the district court erred in entering summary judgment for defendants and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant, a self-proclaimed "vocal critic" of the Teamsters and some of its locals, sought entry into Teamsters Local 49 in September of 1980, submitting an application and a $200 check to cover his initiation fee. Shortly thereafter, he received a Local 49 membership card. In December 1980, appellant was informed in a note from his union steward that Local 49 could no longer accept his dues payments. He was told to call defendant Platanites, Local 49 president, about the problem. Appellant made repeated attempts to reach Platanites, but his phone calls were not returned, and a certified letter he sent went unanswered. In its brief, Local 49 claims that the membership problem arose because appellant applied as if he were a new member of the Teamsters instead of as a transfer member from another local.

In mid-January of 1981, appellant began to work in the jurisdiction of another Teamsters local, No. 42, and he submitted an application to transfer his union membership. The form was not processed, however, because Local 49 denied that he was a member. Defendant Sewall, secretary-treasurer of Local 42, told appellant that he could not transfer into Local 42 until he cleared up his past membership status.

Appellant again made repeated attempts to contact defendant Platanites of Local 49, and finally received a letter informing him that he had never been a member of that local. Appellant also contacted another local to which he previously had belonged, No. 829, which confirmed by letter that he was still on honorable withdrawal from that local. Having established that he was a member of a Teamsters local and therefore eligible to transfer, appellant again sought confirmation of his transfer into Local 42. He wrote to defendant Sewall on July 5, 1981, but received no reply. Two weeks later, on the advice of counsel, he sent a grievance letter to Local 42, but the union took no action.

---

1. Our review of the district court authorities which pose the identical issue indicates dispositions in favor of our approach. *See Rodonich v. House Wreckers Union Local 95*, 624 F.Supp. 678, 120 L.R.R.M. (BNA) 3304 (S.D.N.Y.1985); *Testa v. Gallagher*, 621 F.Supp. 476, 120 L.R. R.M. (BNA) 3310 (S.D.N.Y.1985); and *Gordon v. Winpisinger*, 581 F.Supp. 234 (E.D.N.Y.1984), *reconsideration denied*, 120 L.R.R.M. (BNA) 3303 (1985); *Bernard v. Delivery Drivers*, 587 F.Supp. 524, 524–25 (D.Colo.1984).

Appellant filed his lawsuit against Local 42 on July 7, 1983, alleging that he was denied membership because of his active opposition to union actions and policies. He sought declaratory relief establishing his right to membership in Local 42 and injunctive relief requiring his admission. He also sought an injunction ordering defendants to refrain from any future harassment or interference with his rights as a union member. Finally, he requested monetary damages, attorney's fees and litigation costs.

On August 31, 1983, the district court denied appellant's request for preliminary relief and suggested that appellant renew his efforts to secure a resolution of the dispute within the union. Appellant did so, and the Executive Board of Teamsters Joint Council No. 10, the regional Teamsters body, ruled in December 1983 that appellant should be allowed to transfer from Local 829 into Local 42. The Council did not grant appellant retroactive membership, however, so he appealed to the Teamsters National General Executive Board. That body ruled in April 1984 that appellant would be entitled to retroactive membership in Local 42 upon his payment of back dues from April 1981.

Meanwhile, on March 26, 1984, appellant had filed an amended complaint to add Local 49 and its officers, Baxter and Platanites, as defendants, alleging that their actions regarding his membership in Local 49 caused his membership problems with Local 42. Appellant also claimed that the actions of the Local 49 officers constituted fraud, deceit or misrepresentation in violation of Massachusetts laws.

In July 1984, after the Teamsters national board had ruled that appellant was entitled to retroactive membership in Local 42, he filed a motion for partial summary judgment, claiming that the only issues remaining in controversy were the determinations of monetary damages, attorney's fees and costs. Defendants opposed appellant's motion and filed cross-motions for summary judgment.

On May 1, 1985, the district court granted judgment for all defendants. It concluded that, under *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the appropriate statute of limitations in this case was six months. Because the court found that appellant's causes of action accrued more than six months before his suit was filed, the court held that his claims were time barred.

The statute of limitations is the primary issue before this court. Because we find another statute applicable, we must remand the case to the district court for consideration of a number of matters it did not reach in its original disposition of the case. We discuss some of those matters briefly below, following our discussion of the statute of limitations.

## II. SEARCH FOR A STATUTE OF LIMITATIONS

Recognizing that we are dealing with a complex if not an esoteric set of issues involving several kinds of parties, statutes, causes of action, and periods of limitation, we propose to proceed as follows. We first describe the cast of characters, i.e., the parties and statutes dealt with in the precedents we shall examine. We then attempt to extract the relevant teachings of *DelCostello.* Applying these teachings to the case at bar, we look first to see if there is an analogous state statute of limitations, and then endeavor to see where the balance of opposing interests lies in this case, examining, first, the impact of solitary or free standing LMRDA suits on labor-management relationships and, second, the nature and importance of the rights secured by the LMRDA. Finally, we test the . persuasiveness of what we have said against the contrary precedents.

### A. *The Statutes Governing Economic Rights and Civil Rights*

1. *Economic Rights.* Of older lineage is the structure erected to protect a worker's economic rights. Those rights are secured through negotiations between a un-

ion and employer, resulting in a collective bargaining agreement. Such an agreement makes provision, through dealings between employer and union in grievance and arbitration procedures, for the private settlement of issues involving an employee's economic loss. Ordinarily the result of the dispute settlement procedures will be final, but the union member may pursue his economic rights in court if the union has failed to represent the employee fairly.

"In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. [Citations omitted.] Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301 [of the Labor-Management Relations Act], since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. [Footnote omitted.] 'Yet the two claims are inextricably interdependent. "To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." ' " *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2290 (citations omitted).

In *DelCostello*, the Supreme Court observed that this suit to vindicate an employee's economic rights, a "hybrid § 301/fair representation" suit, amounts to " 'a direct challenge to "the private settlement of disputes under [the collective-bargaining agreement]." ' " *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291.

2. *Civil Rights.* After twenty years of experience with the NLRA, Congress realized that vital non-economic interests of employees were not being adequately pro-

tected under existing legislation. The LMRDA was therefore enacted to regulate the internal affairs of labor unions and protect union members from autocratic abuses by union officials. *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 104 S.Ct. 2557, 2559, 2563, 81 L.Ed.2d 457 (1984); H.Rep. No. 741, 86th Cong., 1st Sess. 1 (1959), U.S. Code Cong. & Admin. News 1959, 2318. Title I of the act is designated a "bill of rights", seeking to vindicate a union member's civil and political rights, its protections covering such matters as freedom of speech and assembly, and equal voting rights.

This appeal deals with a suit based solely on Title I of the LMRDA, a union member's civil rights complaint pure and simple. Appellant's claim is that defendants denied him full and equal rights of membership, apparently because of his protected speech activities, which would be violations of sections 411(a)(1) and (a)(2) of. Title I. He brought suit in federal court pursuant to section 412, which authorizes a civil action for infringement of rights enumerated in section 411.

We recognize that there are cases where LMRDA claims have been appended to what was basically a classic "hybrid" suit to set aside an employer-union compromise on an economic issue where the union violated its duty of fair representation. Our own decision in *Linder v. Berge*, 739 F.2d 686 (1st Cir.1984), was one. There we simply applied the six month statute of limitations to the entire case. *See also Adkins v. International Union of Electrical Workers*, 769 F.2d 330 (6th Cir.1985); and *Vallone v. Teamsters Local 705*, 755 F.2d 520 (7th Cir.1984).[2] Whether and under what circumstances an LMRDA claim also involving union and employer action related to employment can be the subject of suit

**2.** Two district courts also have adopted this view. *McConnell v. Chauffeurs, Teamsters and Helpers Local 445*, 606 F.Supp. 460 (S.D.N.Y.

1985); *Turco v. Local Lodge 5, International Brotherhood of Boilermakers*, 592 F.Supp. 1293 (E.D.N.Y.1984).

filed beyond the six month period we leave for another day.[3]

### B. *The Relevant Teachings of DelCostello*

The very fact that two other circuits have read *DelCostello* as commanding the importing of the NLRA six month statute of limitations into free standing LMRDA cases makes indispensable our closest possible analysis of this case.

We begin by noting that in one of the two cases embraced in *DelCostello*, the limitations period for claims against both union and employer fixed by the lower court was 30 days and that in the other claims had to be asserted against the employer within 90 days, and against the union within 3 years. The Court both began and ended its opinion with homage to the norm of borrowing limitations periods from state law. It began by noting, "We have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law." 462 U.S. at 158, 103 S.Ct. at 2287. *See generally, id.* at 158–61, 103 S.Ct. at 2287–89.[4]

Then the Court noted that it had borrowed a six year period from state law to apply to a union suit against an employer for breach of a collective bargaining agreement in *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Even though labor-management relations were the subject—

ordinarily an issue calling for uniform treatment, the Court observed: "[N]ational uniformity is of less importance when the case does not involve 'those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it,' 383 U.S., at 702 [86 S.Ct., at 1111]. We also relied heavily on the obvious and close analogy between this variety of § 301 suit and an ordinary breach-of-contract case." 462 U.S. at 162–63, 103 S.Ct. at 2289.

The Court then proceeded to articulate its concern in the case before it over periods as short as the 90 days that state laws required for suits to vacate arbitration awards, *id.* at 165–68, 103 S.Ct. at 2291–92. But it also manifested its concern over a limitations period as long as three years. It quoted its language in *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 64, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981): " 'This system [collective bargaining], with its heavy emphasis on grievance, arbitration, and the "law of the shop," could easily become unworkable if a decision which has given "meaning and content" to the terms of an agreement, ... could suddenly be called into question as much as [three] years later.' " *Id.* at 169, 103 S.Ct. at 2293.

Significantly, the Court acknowledged that, even with these objections, "resort to state law might have to be tolerated" if there were no federal statute of limitations "designed to accommodate a balance of

---

**3.** *Cf. Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705 n. 7, 86 S.Ct. 1107, 1113 n. 7, 16 L.Ed.2d 192 (1966), "Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question."

**4.** Several courts have taken this statement to heart and have refused to apply, to other situations as well as to the one before us, the six month statute of limitations which the Supreme Court in *DelCostello* borrowed from the National Labor Relations Act. *See, e.g., Monarch Long Beach Corp. v. Soft Drink Workers, Local 812, International Brotherhood of Teamsters,* 762 F.2d 228, 231 (2d Cir.1985) (company sues union for damages for injuries from secondary boycott; court narrowly construes *DelCostello*

and turns to state law for limitations period); *United Brotherhood of Carpenters and Joiners of America, Local 1020 v. FMC Corp.,* 724 F.2d 815, 817 (9th Cir.1984) (union seeks to set aside arbitration on ground decision does not draw essence from collective bargaining agreement; court rejects *DelCostello* and adopts state law on challenging arbitration); *International Union of Electrical, Radio and Machine Workers v. Ingram Manufacturing,* 715 F.2d 886, 888–89 (5th Cir.1983) (same, employer seeking to set aside arbitration); *Bernard v. Delivery Drivers,* 587 F.Supp. 524, 524–25 (D.Colo.1984) (rejecting section 10(b) for LMRDA claim because reasoning of *DelCostello* inapplicable); *Gordon v. Winpisinger,* 581 F.Supp. 234, 238 (E.D.N.Y.1984) (same).

interests very similar to that at stake here—a statute that is, in fact, an analogy to the present lawsuit more apt than any of the suggested state-law parallels." *Id.* at 169, 103 S.Ct. at 2293. It then noted the very substantial "overlap" and "family resemblance" between unfair labor practices, union breaches of fair representation, and employer breaches of collective bargaining agreements. *Id.* at 170, 103 S.Ct. at 2293. It also stressed as at least equally important to this similarity of rights the similarity of the underlying considerations—" 'stable bargaining relationships and finality of private settlements' ". *Id.* at 171, 103 S.Ct. at 2294. It thus meticulously justified by both negative and positive reflections its choice of NLRA section 10(b)'s six month period.

Having undergone such an intricate analysis, the Court returned to its theme at the outset and cautioned that it was not departing from its preference of borrowing state limitations periods, even saying that "there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm...." *Id.* at 171, 103 S.Ct. at 2289. Even under this elaborate reasoning, carving out a narrow exception from the general borrowing norm, Justices Stevens and O'Connor would have followed the usual rule.

We draw the clear conclusion that *DelCostello* is not the kind of precedent that lends itself as a springboard for easy application to other rights, statutes, and policies. Rather, it is a closely reasoned exception to a general rule which illumines a rather narrow path.

### C. *The Analogous State Statute*

Our " ' "primary guide" ' "—though not our exclusive one [5]—is to look for a state law statute of limitations that applies to analogous state law claims. Unlike the hybrid claim in *DelCostello,* the pure Title I claim does not defy comparison with state law. It is not an amalgam of contract and another sort of claim, such as the duty of fair representation; nor is a free standing Title I claim against a union or union officials inextricably linked with a claim against the employer, as is the *DelCostello* hybrid claim. The Title I cause of action is a straightforward claim against the union or its officers for deprivation of rights guaranteed by a federal "bill of rights". It closely resembles a civil rights claim. Although we typically think of federal law in relation to civil rights violations, *see* 42 U.S.C. § 1983, Massachusetts also has a civil rights statute, Mass.Gen.Laws Ann. ch. 12, § 11 H–I, allowing suit against private persons. Thus, *structurally*, there is no reason to depart from the traditional practice of looking to state law for an appropriate limitations period.

### D. *The Balance of Interests*

Although the fit between a free standing Title I LMRDA claim and a Massachusetts private civil rights claim would seem under *DelCostello* to make further analysis unnecessary, we realize that our disposition is a minority one. We therefore proceed to analyze and try to balance the interests and policies at stake.

#### 1. *The Impact on Collective Bargaining*

As we have noted at the outset, in Section A of this part, the hybrid claims in *DelCostello* involve economic matters related to the union member's employment, as do the unfair labor practice claims from which the Court in *DelCostello* borrowed the six month limitations period. In contrast, the free standing Title I claim alleges a violation of "union democracy" and is concerned about the internal operation of the union. Although both types of claims may involve allegations of "discrimination", discrimination in a hybrid claim or unfair labor practice charge is likely to center on unequal employment status, al-

---

5. *DelCostello,* 462 U.S. at 161, 103 S.Ct. at 2289, quoting *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977) quoting *Johnson v. Railway Express Agency,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975).

legedly caused by the union's discriminatory treatment, in contrast to internal discrimination, e.g., depriving some individuals of the right to vote on certain union matters, disciplining without due process or in retaliation for speech, or refusing access to books and records. On the one hand, the complaint is first, and foremost, that of an employee; on the other, it is that of an organization member. *See generally* R. Gorman, Labor Law 699–701 (1976) (union member's protection under NLRA includes "freedom from unfair, irrelevant or invidious treatment at the hands of the statutory bargaining representative *in matters affecting the employment relationship*", *id.* at 699) (emphasis added).

We acknowledge that the National Labor Relations Board has occasionally gone beyond this rationale to find violations of Section 8(b)(1)(A) of the NLRA for actions not directly implicating employment. *See, e.g., East Texas Motor Freight*, 1982–1983 NLRB Dec. ¶ 15,002; *Western Renaissance Corp.*, 1983–1984 NLRB Dec. ¶ 15,931. The fact that there is an overlap between Section 8(b)(1)(A) and §§ 411 and 412 of the LMRDA does not make the exception prove the rule. The labor-management relationship is still the core of the NLRA, as it is the core of the hybrid section 301/fair representation claim, and as distinguished from the LMRDA. Moreover, we see no significant problem if a union member, whose unfair labor practice charge has been barred by the statute of limitations, is allowed to file a timely LMRDA claim based on the same deprivation of a speech or voting right, if such has not affected his employment. At least in the case of a free standing claim which could fit either under section 8(b)(1)(A) or sections 411 and 412, we see no more reason to apply exclusively section 10(b)'s limitations period than to hold that a similar claim falls within the exclusive jurisdiction of the Board. *Cf. Boilermakers v. Hardeman*, 401 U.S. 233, 238, 91 S.Ct. 609, 613, 28 L.Ed.2d 10 (1971). Indeed, the added opportunity for a remedy is consistent with Title I's focus on individual rights.

The difference in focus between the union democracy claims under Title I and the employment claims at issue in *DelCostello* leads to several concrete differences in the suits filed under these statutes. A Title I suit cannot be brought against the employer. It in no way challenges the "stable relationship" between the employer and the union. It does not affect any interpretation or effect any reinterpretation of the collective bargaining agreement and so, unlike the hybrid actions, a Title I claim does not attack a compromise between labor and management. Moreover, another factor in the *DelCostello* equation is lacking. There is no erosion of the finality of private settlements, for in free standing LMRDA cases the union member is not attempting to attack any such settlement. As in *Auto Workers v. Hoosier Cardinal Corp.*, this case does not involve either " 'the formation of the collective agreement [or] the private settlement of disputes under it.' " 462 U.S. at 163, 103 S.Ct. at 2289.

We conclude, therefore, that the interests served by a rather short statute of limitations in *DelCostello*, stable labor-management relationships and finality in privately grieved and arbitrated settlements, are virtually, if not entirely, absent in the case at bar.

### 2. *The Union Member's Interest*

By contrast, the interest of the employee or union member is qualitatively enhanced in a Title I case. It is an interest created by specific statute, recognizing a national policy. Under the hybrid claim there are no such specifically identified rights. In some ways the contrast resembles that between a plaintiff with a federal civil rights claim and a plaintiff with a contract claim.

The legislative history gives emphasis to this observation. The Congressional debate on the LMRDA includes repeated references to Title I as a "bill of rights" akin to that in our federal constitution, and the concern expressed was for individuals in relation to their "government". Representative Griffin, who coauthored one ver-

sion of the LMRDA, gave the following description of the bill of rights provision:

"These basic guarantees are hardly new or novel—they are essential and fundamental rights which every American citizen is guaranteed in the Bill of Rights of the Federal Constitution.

"As the senior Senator from Arkansas has said:

"There is no reason why a union man should be required to leave the rights guaranteed to him by the Constitution of the United States at the door when he goes into a union meeting.'"

105 Cong.Rec. 14,193 (1959).

*See also* 105 Cong.Rec. 5,806 (1959); *id.* at 6,478; H.Rep. No. 741, 86th Cong., 1st Sess. 7 (1959); *cf. Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 104 S.Ct. 2557, 2564, 81 L.Ed.2d 457 (" 'Congress adopted the freedom of speech and assembly provision ... in order to promote union democracy.'").[6]

We thus draw from this history the sense that claims under Title I's bill of rights provisions were viewed primarily as civil rights matters rather than as labor matters. It was not coincidence that Title I was labelled a "bill of rights", and we believe it therefore is more logical to derive a statute of limitations for pure Title I claims from a civil rights statute than from an unfair labor practices statute.

The legislative history also suggests the inapplicability of section 10(b)'s limitations period for a different reason. Section 411(a)(4) of Title I protects the union members' rights to sue their union under the LMRDA or any other statute, but requires

that they exhaust internal procedures for up to four months before filing suit. When Senator McClellan first introduced the bill of rights on the floor of the Senate, the internal exhaustion requirement was three months. 105 Cong.Rec. 5,810 (1959). It was changed to six months before the bill left the Senate. *Id.* at 9,108. In the House, legislators focused on how the six month provision would bar suits under the NLRA because of *that* statute's six month limitations period. *See id.; id.* at 13,880; *id.* at A8510. The problem was that union members who exhausted remedies for the required six months would find their NLRA claims time-barred at the end of that period. There is no indication that the members of Congress felt a similar concern about union members losing suits under the LMRDA. While this history is not equivalent to an express intent that the limitations period for the LMRDA be greater than six months, we do view it as some support for the argument that Congress expected that LMRDA plaintiffs would have more time to bring their suits.[7]

Given the importance of the rights assured by the LMRDA, the concern voiced by the Court in *DelCostello* over the problems faced by an employee in bringing a hybrid suit becomes more serious. 462 U.S. at 166, 103 S.Ct. at 2291. The Court pointed to the difficulties of evaluating the adequacy of union representation, retaining counsel and investigating hybrid cases. And yet, it may well be that the general run of hybrid cases may be brought with less difficulty than LMRDA claims. They may be more a part of the "law of the shop" and familiar to the employee. Filing an unfair labor practice claim is, without doubt, more easily accomplished. A union

---

**6.** *See also Knox County Local, National Rural Letter Carriers' Ass'n v. National Rural Letter Carriers' Ass'n*, 720 F.2d 936, 938 (6th Cir.1984); *Mallick v. International Brotherhood of Electrical Workers*, 644 F.2d 228, 235 (3d Cir.1981); Cox, *Internal Affairs of Labor Unions Under the Labor Reform Act of 1959*, 58 Mich.L.Rev. 819, 831–33 (1960).

**7.** We also see some significance in the fact that Title IV of the LMRDA, 29 U.S.C. § 482, set a short time limit for resolving issues concerning

the election and removal of union officers—a three-month internal exhaustion period, a member's complaint within one month thereafter, and a suit by the Secretary of Labor within the next 60 days. There is an obvious need for dispatch in resolving a question of union leadership. The fact that Congress acted in this instance suggests that its silence as to Title I implies a lack of special concern about expedition.

member need only file a one-page charge form with the Board.

Whether or not LMRDA claims or unearthing the facts to support them are more complex or difficult than hybrid or unfair labor practice claims, there are other differences weighing in favor of a longer period for bringing labor-related civil rights claims. In most cases a Title I plaintiff will be a union member who, unlike many unfair labor practice claimants, has not lost his job but wishes to remain a member. To decide to sue one's co-workers and superiors who may have much to do with one's future fate even if one is successful gives pause. Such a decision is not lightly taken; the pressures on such a plaintiff to collect facts, retain an attorney and reflect suggest the inappropriateness of a six month period. Moreover, the objective sought in the typical hybrid case is a purely personal victory in the form of restoration of job, pay, or promotion. In contrast, the objective of LMRDA cases is to increase union democracy, which is a benefit to all union members and the public at large. We therefore conclude that the interests of the union member with a free standing LMRDA claim are such as to tilt against applying the six month section 10(b) limitation.

\* \* \*

In summary, we conclude that all three *DelCostello* guidelines point to adhering to the norm of borrowing a state limitations period. First, there is an apt fit with the Massachusetts civil rights law. Second, bringing suit on a free standing Title I claim does not impinge on labor-management relationships or the finality of private settlements. Third, the sorts of interests protected by the LMRDA make it inappropriate to limit suits under that act without a compelling reason.

## E. *Analysis of Contrary Precedents*

It remains for us to examine the decisions of the two courts of appeals that have reached a contrary result and have applied the NLRA's section 10(b) six month statute of limitations to free standing LMRDA Title I claims.

Perhaps the most significant observation we can make is that in neither case was there an analogous state statute of limitations with anywhere near the aptness and closeness of fit of the Massachusetts civil rights statute in this case. In *Local 1397*, 748 F.2d 180, the plaintiffs, officers of a local union, complained of being wrongfully reprimanded and suspended by a national union panel; their preferred state analogue was the Pennsylvania six-year limitations period for tortious interference with business relations. 748 F.2d at 182. In searching for a comparison with a labor bill of rights, one does not readily think of something like the tort of interfering with business relations. Similarly, in *Davis*, 765 F.2d 1510, the plaintiff complained of his wrongful expulsion from his union; the best that he could suggest as analogues were Florida's four-year period for negligence actions and its two-year period applicable to professional malpractice. 765 F.2d at 1514 n. 10.

In view of the commanding importance assigned by *DelCostello* to an appropriate, even if imperfect, analogy, 462 U.S. at 171, 103 S.Ct. at 2294, our decision need not be read as in direct conflict with *Local 1397* and *Davis*, the Massachusetts civil rights statute being so much more an appropriate analogue. Nevertheless, both courts proceeded to balance interests as if the *DelCostello* calculus applied, and we feel obliged to evaluate their approach.

The earlier and more detailed analysis was made in *Local 1397*. It embodied four basic propositions, and we respectfully take issue with each of them. The first was that a Title I action bears a "family resemblance" to an unfair labor practice charge: both are concerned with "arbitrary actions by unions", 748 F.2d at 183, and so there is thus no distinction between "internal" LMRDA concerns and "external" NLRA concerns. *Id.* This, we feel, is to stretch the rubric of "family" far beyond its sense in *DelCostello*, where the term was used to indicate a dramatic overlap of equivalency,

situations in which a charge of unfair representation or breach of a collective bargaining agreement would "also amount to unfair labor practices". 462 U.S. at 170, 103 S.Ct. at 2293. The fact that because both the NLRA and the LMRDA endeavor to protect workers from unfair treatment, they must be deemed to bear a "family resemblance" is no more a unifying perception than the fact that both tort and contract law purport to protect against unreasonable actions.

A second, closely related proposition of the *Local 1397* court was that its "family resemblance" perception was illustrated by the fact that plaintiffs' objective was to change the overall policies of the national union in bargaining with industry. Again, while true, the observation claims too much; it overlooks the fact that the *Del-Costello* court did not overrule *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), where, although a collective bargaining agreement was at issue, the Court applied a six-year state contract limitations period because the " 'consensual processes' "—" 'the formation of the collective agreement and the private settlement of disputes under it' " were not implicated. 462 U.S. at 162–63, 103 S.Ct. at 2289. In short, the fact that some day, in some ways, a plaintiff's claim may affect collective bargaining falls far short of the nexus required to invoke "family resemblance" reasoning.

A third statement by the *Local 1397* court is that there is a "similarity in policy considerations [between] ... LMRDA suits and unfair labor practice charges" that dictates invocation of the same six-month section 10(b) limitations period. 748 F.2d at 183. The only reasoning supporting this conclusion is that "rapid resolution of internal union disputes is necessary to maintain the federal goal of stable bargaining relationships, for dissension within a union naturally affects that union's activities and effectiveness in the collective bargaining arena." *Id.* at 184. As to this ipse dixit, we can do no better than cite the *Davis* court, which, after quoting this passage, observed, "This link appears rather tenuous in the situation of a single dispute between an individual union member and the union." 765 F.2d at 1514 n. 11.

Finally, and of less importance, the *Local 1397* court added "as a final point" that a Title I LMRDA action would rarely be latent, since "rights are denied openly". 748 F.2d at 184. Leaving aside the obvious point that in the case at bar the allegations describe a non-open, non-obvious denial of membership, perceivable only gradually, perhaps a more salient point is that which we have noted in our main discussion, the solemnity of the union member's decision to attack the leadership and the possible benefit redounding to the membership and public at large.

We do not say that the points made by the *Local 1397* court are without substance or relevance; we merely conclude that their weight is not sufficient to impeach the analysis we have made as to the appropriateness of the available state statute, and the balancing of the interests and policies here at stake.

As to the *Davis* case, we note first that it expressly relied in large part on *Local 1397* and adopted the latter's "family resemblance" rubric. More significantly, the *Davis* court recognized the "important distinction" between its LMRDA case and the hybrid situation in *DelCostello*—the facts that neither the stability of labor-management bargaining relationships nor the speedy, final resolution of disputes under a collective bargaining agreement was implicated and that the union member's rights under Title I were of greater importance than "an employee's interest in setting aside an individual settlement under a collective bargaining agreement." 765 F.2d at 1514.

We are unable to follow the court in its precipitate jump from this deadly analysis to the immediate conclusion that the "national interest in labor peace" identified in *DelCostello* requires a foreshortened period within which to sue a union for mistreatment of its members.

Again, we are unpersuaded.

## III. APPROPRIATE LIMITATIONS PERIOD

We believe that our foregoing discussion fully explains why we view an LMRDA Title I claim to be analogous to a civil rights action. Because Massachusetts does have a state civil rights act, Mass. Gen.Laws Ann. ch. 12, § 11H–I, that statute is the appropriate source of a limitations period for a Title I claim. But, consistent with the federal Civil Rights Act, 42 U.S.C. § 1983, the state civil rights statute has no explicit statute of limitations. We therefore believe that the appropriate limitations period in this case should be borrowed from state tort law. "Traditionally, civil rights actions have been considered to state a cause of action lying in tort ...", *Graffals Gonzalez v. Garcia Santiago*, 550 F.2d 687, 688 (1st Cir.1977), and the Supreme Court recently endorsed this choice of law for federal civil rights claims under 42 U.S.C. § 1983, *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Moreover, we previously have approved the use of state tort law for a claim under the LMRDA. *Berard v. General Motors Corp.*, 493 F.Supp. 1035 (D.Mass. 1980), *aff'd without opinion*, 657 F.2d 261 (1st Cir.1980), *cert. denied*, 451 U.S. 987 (1981). *See also Bernard v. Delivery Drivers*, 587 F.Supp. 524, 525 (D.Colo. 1984). Thus, we hold that Massachusetts' three year statute of limitations for tort actions, Mass.Gen.Laws Ann. ch. 260, § 2A, governs appellant's claims under the LMRDA.

## IV. ACCRUAL OF APPELLANT'S CLAIMS

There is no dispute that appellant's claims against Local 42 did not accrue at least until early 1981. His claims against that organization and its officers were therefore timely, and so we reverse the dismissal of appellant's case as to those defendants.[8]

The situation with respect to Local 49 is more difficult. The district court found that appellant "was well aware that he was engaged in a dispute with Local 49 as early as December 1980." He did not file suit against Local 49 and its officers, however, until he submitted his amended complaint in March 1984. Thus, even under a three year statute of limitations, it may be that appellant's claims against Local 49 are time barred. We decline to decide this issue, however, and remand it to the district court for further consideration for two reasons.

First, appellant argues that his claims did not, in fact, accrue against Local 49 in December 1980. Appellant's complaint does not directly challenge Local 49's denial of membership; it focuses instead on the relationship of Local 49's actions to his problems with membership in Local 42. Thus, appellant contends that the return of his dues from Local 49 in December 1980 is irrelevant to the accrual of the present claim. He claims that no cause of action against the Local 49 defendants could have accrued at least until he was told in April 1981 that his transfer into Local 42 depended upon his clearing up the problems with his membership in Local 49. We believe this is a factual matter which should be considered first by the district court.

Second, appellant impliedly argues that his claims are timely in any event because his amended complaint should relate back to the date of his original complaint, which was filed in July 1983, within the three year statute of limitations. We believe that the district court should decide, in the first instance, whether appellant fulfilled the requirements of Rule 15 of the Federal Rules of Civil Procedure for relating back an amendment that changes the party against whom a claim is asserted.

Because we believe issues not previously considered by the district court, including the pendent state law claims, should be addressed in the first instance by that court, the only matter left for our consider-

---

**8.** Our ruling on the statute of limitations makes moot the issue of whether Local 42 waived the statute of limitations as a defense.

ation is the district court's refusal to re-cuse itself. We find no error in that decision.

*Accordingly, the judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.*