Brian LINNANE, Plaintiff, Appellant,

v.

GENERAL ELECTRIC CO., et al., Defendants, Appellees.

No. 91–1530.

United States Court of Appeals, First Circuit.

Heard Sept. 12, 1991.

Decided Nov. 6, 1991.

Daniel J. Harrington, Melrose, Mass., for plaintiff, appellant.

John McMahon with whom Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, Boston, Mass., was on brief, for defendants, appellees.

Before TORRUELLA, Circuit Judge, COFFIN and TIMBERS,* Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Appellant Linnane challenges the dismissal of his complaint against his Union for the violation of his rights under the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 411, 412, and 529.

* Of the Second Circuit, sitting by designation.

Although the dismissal of the complaint after oral argument was unaccompanied by written opinion, the issue engaging the parties below was the appropriate statute of limitations for Linnane's claims. Linnane argues that he is entitled to the three-year period judicially approved for "free standing" LMRDA claims, *Reed v. United Transp. Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). The Union contends the shorter six-month period applicable to claims under § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C.A. § 160(b), applies here. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Although we find the case somewhat more complex than was presented by the parties, we affirm.

According to the complaint, plaintiff, an employee of the General Electric Company (GE) and a member of the International Union of Electronic, Electrical, Technical, Salaried and Machine Workers, Local 201 (the Union), regularly engaged in vocal criticism of the Union. The criticism included complaining of nepotism in placement and promotion of relatives of union officials and discrimination against women employees and lack of union presence at one of GE's facilities. Linnane alleges in his complaint that he was told by union officials to "mind his own business." In April 1988, plaintiff sustained a knee injury and ultimately was discharged by GE for alleged failure to provide adequate medical documentation of his ability to return to work.

The plaintiff further alleges that union representatives told him not to worry and to apply for unemployment compensation and that his grievance concerning his discharge was being processed. On February 12, 1989, the plaintiff learned for the first time that his grievance was not being processed and that GE and the Union had reached an agreement under which, without his knowledge or consent, the Union agreed to withdraw plaintiff's grievance in return for GE's ceasing to oppose plaintiff's application for unemployment benefits.

A few days short of six months later, plaintiff filed a complaint with the National Labor Relations Board (Board) against both the Union and GE. Subsequently, in a September 21, 1989, letter to plaintiff, the Board reported its decision that the matter did not warrant further proceedings. Plaintiff appealed this determination. The appeal was denied by the Office of Appeals of the Board on November 16, 1989. Plaintiff sought no judicial review of this ruling.

Almost a year later, on October 18, 1990, plaintiff filed his complaint in this case— one year and eight months after he had learned of the Union's inaction concerning his grievance and its alleged agreement with GE. The complaint contained two counts. The first alleged that GE violated the terms of its collective bargaining agreement. This was subsequently withdrawn, since an LMRDA claim does not lie against an employer. *Hayes v. Consolidated Service Corp.*, 517 F.2d 564, 566 (1st Cir.1975). In the count which concerns us, plaintiff sought damages against the Union "for its failure to properly investigate and prosecute his grievance concerning his discharge for prohibited reasons."

The defendant moved to dismiss the complaint on the ground that, accepting all of plaintiff's allegations as true, no cause of action was stated under the LMRDA because, under *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union*, 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989), the alleged action of the Union did not constitute impermissible union "discipline" of a member for exercising civil rights guaranteed by the LMRDA. The Union also alleged that even if there were a cause of action stated under the LMRDA, it ought to be subject to the same six-month limitations period as a hybrid § 301/fair representation suit against an employer and a union,[1] since plaintiff's lawsuit was

---

1. The hybrid action combines a claim against an employer under § 301 of the LMRDA, 29 U.S.C. § 185(a), for violating a collective bargaining agreement and a claim of unfair representation against the union under the National Labor Relations Act, 29 U.S.C. § 151. Such a suit amounts to "'a direct challenge to the private settlement of disputes under [the collective-bar-

in reality an attack against a compromise settlement arrived at by an employer and union. *See DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Doty v. Sewall,* 784 F.2d 1 (1st Cir.1986).

Plaintiff's Brief in Opposition maintains that the Union's conduct "amounted to a clear violation of [his] right to free speech protected by ... Sec. 411 [of the LMRDA]," [2] and, thus, to "far more than the mere breach of its duty to fairly ... represent the Plaintiff." According to plaintiff, the Union's deliberate misrepresentations of the status of his grievance were made "with the specific intention of disciplining [him] by causing his permanent separation from G.E. and Local 201 because he was a vocal and regular critic." He therefore claims that he adequately has stated an LMRDA claim to which a three-year limitations period applies.

In *Breininger,* 493 U.S. 67, 110 S.Ct. 424, the Supreme Court considered the meaning of "discipline" under §§ 411 and 529 of the LMRDA.[3] In that case, a union member claimed, *inter alia,* that his union breached its obligation under the LMRDA by refusing to refer him to employment through the union hiring hall as a result of his political opposition to union leadership. Examining the structure and the legislative history of the LMRDA, the Court determined that "discipline," within the framework of the act, does not "include all acts that deter[ ] the exercise of rights protected under the LMRDA, but rather ... instead ... denote[s] only punishment authorized by the union as a collective entity to enforce its rules." *Breininger,* 493 U.S. at 91, 110 S.Ct. at 427. The Court concluded that "[d]iscipline ... impl[ies] some sort of established disciplinary process rather than ad hoc retaliation by individual union officers." *Id.* at 91–92, 110 S.Ct. at 427.

In an accompanying footnote, the Court acknowledged that such discipline might involve "novel forms of penalties different from fines, suspensions, or expulsions.... if it were imposed as a sentence on an individual by a union in order to punish a violation of union rules." *Id.* at 92 n. 15, 110 S.Ct. at 439 n. 15. It also noted that the statute's several procedural protections "would not apply to instances of unofficial *sub rosa* discrimination." *Id.* at 92, 110 S.Ct. at 439. The Court concluded that because petitioner "was not punished by any tribunal, nor was he the subject of any proceedings convened by respondent," *id.* at 94, 110 S.Ct. at 440, he had not been "disciplined" within the meaning of the LMRDA.

We cannot escape the conviction that the Union conduct alleged by appellant in this case does not rise to the level of collective formality outlined in *Breininger.* Appellant attempts to bring himself within the "otherwise disciplined" language of §§ 411 and 529, by arguing that the deliberate misrepresentations of the Union regarding the status of his grievance constituted discipline "formally sanctioned by the

---

*gaining agreement].'" Doty v. Sewall,* 784 F.2d 1, 4 (1st Cir.1986) (quoting *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983)).

2. Section 411(a)(2) provides, *inter alia,* that "[e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments or opinions."

   Section 411(a)(5) states:

   No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

3. Section 529 states:

   It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section.

   Appellant does not invoke § 529 directly. However, because it is plainly implicated by the allegations contained in his complaint and his argument on appeal, we consider whether Linnane has successfully stated a claim under this provision along with §§ 411 and 412.

union as a body." Appellant's Brief at 9. But we do not discern in the complaint, or through inferences reasonably to be drawn from it, any suggestion of formal sanctioning. Appellant refers to discussions between himself and "several union officials" and "agents of the Union" and "a union representative." He also points out that his attacks were not against particular officials but against the Union as a whole, i.e., that he was not engaged in a vendetta.

In so reasoning, appellant overlooks the fact that the analysis set forth in *Breininger* is concerned less with the cast of the union member's complaint—the extent to which it characterizes the Union's actions as collective and official—than with the nature of the Union's conduct. Plaintiff has failed to allege, much less demonstrate, that the Union as a body in a proceeding formal or informal, deliberately voted to misrepresent the status of his grievance. We therefore hold that the alleged conduct of the Union in misrepresenting the status of Linnane's grievance falls short of the standards expressed in *Breininger* and, accordingly, does not fall within the definition of "discipline" contained in 29 U.S.C. §§ 411 and 529.

This does not end our inquiry. Appellant appeared, at one point in his briefing below, to suggest that the Union had violated his free speech rights under § 412 of the LMRDA,[4] independent of his claim under §§ 411 and 529. In his Brief in Opposition to the Union's motion to dismiss, appellant states that the Union's conduct "form[s] the basis for his prosecuting th[e] violation of his rights pursuant to Sec. 412." As was pointed out in *Finnegan v. Leu*, 456 U.S. 431, 439, 102 S.Ct. 1867, 1872, 72 L.Ed.2d 239 (1982), § 412 "provides independent authority for a suit against a union based on an alleged violation of Title I of the Act." *Id.*[5]

Despite plaintiff's reference to § 412, his Brief in Opposition consists solely of alle-

gations and argument relating to the §§ 411 and 529 impermissible discipline claim. He makes no reference to a violation of his rights, independent of any "discipline" by the Union. The brief concludes with the statement that "[i]t is Linnane's position that he was disciplined by Local 201 for his vocal criticism of it. For this reason, Local 201's Motion to Dismiss for failure to state a claim should be denied."

On appeal, plaintiff similarly states the issue as follows: "This action constitutes discipline under section 411 of the LMRDA. The motive for this discipline rested in Linnane's regular and vocal criticism of the Union. For this reason, Linnane contends that his Complaint did not fail to state a cause of action against the Union under the LMRDA." Appellant's Brief at 8. And, throughout his brief, appellant consistently refers to the Union's conduct as "discipline." *See id.* at 2, 9, 23, 24, 29.

■ Our review of appellant's argumentation in the district court and especially on appeal leads us to conclude that he has waived any basis for a claim under the LMRDA, including § 412, other than his claims of having been "disciplined" in violation of his rights under §§ 411 and 529. In *Breininger*, the Court declined to "pass on petitioner's claim that certain of his rights secured by the LMRDA were 'infringed' ... in violation of [§ 412] ... because the claim was neither presented to or decided by the Court of Appeals below, and thus [was] not properly before [the Court]." 493 U.S. at 94 n. 18, 110 S.Ct. at 440 n. 18. As was the case in *Breininger*, there is nothing in the record of this case to alert the district court or ourselves that a § 412 claim is being asserted. Accordingly, we refuse to consider whether appellant has a viable claim under § 412.

We are reluctant, however, relying solely on waiver, to leave the implication that, if there were no waiver, appellant would have a strong case. Because the relationship

**4.** Section 412 states:
Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United

States for such relief (including injunctions) as may be appropriate.

**5.** Title I of the LMRDA includes, *inter alia,* §§ 411 and 412.

between §§ 412 and 529 is unclear, *see Finnegan v. Leu*, 456 U.S. at 439, 102 S.Ct. at 1872, we consider the proper limitations period applicable to a suit arising from a secret union-employer agreement, in breach of the union's duty of fair representation, where the only remedy sought is against the union for its alleged violation of a member's free speech rights.

In *Doty v. Sewall*, 784 F.2d 1, 2 (1st Cir.1986), we determined the applicable statute of limitations for an LMRDA Title I suit brought by a "self proclaimed vocal critic" of the union who claimed to have been denied union membership impermissibly on the basis of his free speech. In that case we considered specifically whether the six-month limitations period prescribed by § 10(b) of the NLRA, rather than a longer period, applies to a pure LMRDA civil rights claim. The Supreme Court in *Del-Costello v. International Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), had determined that the six-month period of § 10(b) applies to a hybrid § 301/fair representation suit to set aside an employer-union compromise. *See supra*, note 1. This court, in *Linder v. Berge*, 739 F.2d 686 (1st Cir.1984), had concluded that the six-month period also applies where an LMRDA claim has been appended to a hybrid suit.

In *Doty* we noted that the rationale underlying the use of the shorter period in hybrid suits, namely, the federal policy favoring rapid resolution of disputes disruptive of labor-management relations, was not implicated by a pure LMRDA claim, which seeks the vindication of a union member's civil rights within the union. Because Doty's suit sought neither to affect his employment nor to "attack a compromise between labor and management," *id.* at 7, but was directed solely toward exonerating his right of free speech within the union, we determined that the longer limitations period was appropriate. *See id.* at 9.

In *Reed v. United Transp. Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), dealing with a union local's refusal to reimburse its secretary treasurer, an outspoken critic of the local president, for time lost carrying out union duties, the Supreme Court held that claims under § 411(a)(2) of the LMRDA were governed by the longer limitations period of state personal injury statutes. The Court reasoned that § 411(a)(2) claims would generally have only a "tangential and remote" relationship to collective bargaining agreements. *Id.* at 330, 109 S.Ct. at 628. Quoting with approval our analysis in *Doty*, the Court ruled that a Title I suit:

> does not directly "challeng[e] the 'stable relationship' between the employer and the union. It does not affect any interpretation or effect any reinterpretation of the collective bargaining agreement and so, unlike the hybrid actions, a Title I claim does not attack a compromise between labor and management.... There is no erosion of the finality of private settlements, for in the free standing LMRDA cases the union member is not attempting to attack any such settlement."

*Reed*, 488 U.S. at 331, 109 S.Ct. at 629 (quoting *Doty*, 784 F.2d at 7).

■ Though characterized by Linnane as a "free standing" LMRDA claim, his complaint alleges hybrid facts. The essence of Linnane's complaint is that the Union entered a secret agreement with his employer, without his knowledge and to his detriment, in retaliation for his criticism of union practices. To be sure, the events giving rise to this litigation support an LMRDA free speech claim. The resolution of such a claim within the context of this case, however, would directly impugn the validity of the settlement between GE and the Union. We note, in this regard, that Linnane's complaint initially joined both the Union and GE as defendants, asserting that GE wrongfully discharged Linnane "in violation of the terms of [their] Collective Bargaining Agreement," and requesting relief in the form of reinstatement at GE and damages from both GE and the Union. And though Linnane dismissed GE from the action, it strikes us that this in no way dislodged the GE–Union relationship from the center of the suit. On appeal, Linnane argues that the Union misrepresented the status of his grievance in order "to insure

his permanent separation from GE." Appellant's Brief at 23. Any resolution of Linnane's free speech claim would cast a shadow upon the allegedly secret agreement between GE and the Union and perhaps upon the legitimacy of Linnane's initial discharge from GE, as well. Such a result might chill future dispute-resolution agreements between management and labor.

The question we ask is whether it makes sense to allow a plaintiff to evade the six-month limitation period by repackaging a hybrid § 301/fair representation suit as a subset of that action, namely, as an LMRDA free speech claim alleging impermissible union retaliation and unfair representation. We doubt that it does—particularly given our suspicion that unfair representation claims will often arise in the same context as the free speech claims of dissident union members. *Cf. Early v. Eastern Transfer*, 699 F.2d 552 (1st Cir. 1983).

To permit such an end-run around the six-month period would subvert the federal policy favoring the stability of labor-management relations and the rapid resolution of disputes threatening such stability. In addition, it would invite claim splitting and replicative litigation. Were the three year statute of limitations to apply in a case such as this, a union member could file and abandon a hybrid claim, only to renew essentially the same claim at a substantially later date—this time invoking the LMRDA and suing only the union. We can find no justification for giving union members a second chance with the same complaint.

In so reasoning, we are aware that the Court in *Reed* considered the argument that § 411(a)(2) claims might also overlap with claims in a hybrid suit, and, while not expressing any opinion, left open the question whether § 411 actions should be governed by a state statute of limitations or by NLRA § 10(b). *See* 488 U.S. at 333 n. 7, 109 S.Ct. at 630 n. 7. In the case before us, however, the LMRDA claim is only a narrowed version of the broader unfair representation claim. The Union's duty of fair representation is a broad one, "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). Any free speech LMRDA claim that might be raised on the facts alleged in this case would necessarily be a particularization of hostility, discrimination, bad faith, and dishonesty. We suspect that under these circumstances the teaching of *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) would prevail, i.e., that parties should not be allowed to circumvent statutory requirements by relabeling their claims. *See id.* at 211, 105 S.Ct. at 1911 (contract claims under collective bargaining agreements should not be allowed to be relabeled claims for tortious breach of contract).

The judgment of the district court is *affirmed.*