Robert A. GIBSON, et al.,
Plaintiffs-Appellants,

v.

AT & T TECHNOLOGIES, INC., a corporation, f/k/a Western Electric Company, a corporation, Defendant-Appellee.

No. 85-1815.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1985.

Decided Jan. 27, 1986.

Roland East, Carr & O'Rourke Assoc., Chicago, Ill., for plaintiffs-appellants.

Charles C. Jackson, Seyfarth, Shaw, Fairweather, Chicago, Ill., for defendant-appellee.

Before BAUER and POSNER, Circuit Judges, and GRANT, Senior District Judge.[*]

BAUER, Circuit Judge.

Plaintiffs, Robert A. Gibson, Casmir Miller, Charles Smith, Joseph Stempine, and Don C. Cannon, all former employees of the Hawthorne Works plant in Cicero, Illinois, brought suit under a state law fraud theory alleging that defendant, AT & T Technologies, Inc., improperly deprived them of the layoff allowance which was provided for in their collective bargaining agreements. The district court granted defendant's motion for summary judgment on the basis that plaintiffs' state law tort claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and that since plaintiffs failed to bring this action within the six month statute of limitations period applicable to section 301(a) actions, the action is time barred. We affirm the judgment of the district court.

This action stems from the closing by defendant of its Hawthorne Works Plant. Plaintiffs are former employees of the plant who voluntarily left their positions of employment in 1983 and agreed to participate in the Supplemental Income Protection Program ("SIPP"). Essentially, the program provides an alternative to employees who might be subject to a decrease in wages, involuntary job reassignment, or layoff, to voluntarily accept SIPP benefits when an employer determines that a surplus of employees exists due to technological change or other circumstances. SIPP is provided for in the collective bargaining agreement entered into between the plaintiffs' unions and the defendant. Plaintiffs accepted SIPP benefits in the several months preceding the announcement on June 24, 1983 of the defendant's plans to close the Hawthorne Works Plant.

Plaintiffs allege that AT & T wrongfully withheld information from them about the plans to close the plant at the time it offered the SIPP benefits. They argue that because defendant withheld this information, plaintiffs were deprived of their entitlement to layoff allowances which amounted to more money than the SIPP benefits plaintiffs received. For example, plaintiff Robert Gibson accepted the defendant's offer to resign and received SIPP benefits of $3,375.00. Gibson's layoff allowance, considering his 42

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

years employment with AT & T, totaled $54,163.20. By accepting SIPP benefits, Gibson lost $50,788.20. Plaintiffs contend that had they known of the plans to close the plant at the time they were offered SIPP, they would have refused SIPP and continued working until the plant closed and their jobs were terminated.

On appeal, plaintiffs argue that their state law claim for willfully withholding information is not preempted by Section 301(a) of the LMRA because the state has an interest in controlling or remedying the conduct in question. Although we agree that the state has an interest in the conduct of its citizens, the state law in cases rooted in Section 301 of the LMRA has been completely preempted.

## I.

■ Section 301(a) vests jurisdiction in the federal courts over all suits for "violation of contracts between an employer and a labor organization representing an industry affecting interstate commerce." 29 U.S.C. § 185(a). Despite plaintiffs' attempt to characterize their action under state tort law, their action actually arises from a collective bargaining agreement and thus is controlled by federal law.

In *Oglesby v. RCA Corporation*, 752 F.2d 272, 277 (7th Cir.1985), this court held that plaintiffs' claim arose under federal law, specifically Section 301 of the LMRA, which preempts state law. There, the gravamen of each count was that plaintiff was fired without just cause. We held "that plaintiff had simply alleged a cause of action for wrongful discharge and if shown to be in violation of a collective bargaining agreement subject to Section 301, LMRA, the action arises under federal law and the fact that it was not characterized in the complaint as a federal claim is not determinative." *Id.* at 276.

Similarly, plaintiffs complain about their failure to obtain layoff benefits created by a collective bargaining agreement. Plaintiffs acknowledge that this court's decision in *Oglesby* forecloses their claim, yet they ask this court to reconsider. (Br. 12–13).

The holding in *Oglesby* is dictated by settled principles which are demonstrated in the Supreme Court's recent decision in *Allis-Chalmers Corp. v. Lueck*, —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), which embraces the *Oglesby* rationale. In *Lueck*, an employee brought a state tort action claiming that his employer and insurer handled his insurance claim in bad faith. In language expressly rejecting plaintiff's argument that Section 301 does not apply, the court stated:

If the policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations.... Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract. 105 S.Ct. at 1911.

Earlier Supreme Court decisions interpreting Section 301 also dictate this result. *See Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962) (Section 301 preempts state law tort and contract causes of action and "calls for uniform [federal] law" to facilitate the negotiation of labor agreements and provide for resolution of disputes). *See also, Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 454, 77 S.Ct. 923, 916, 1 L.Ed.2d 972 (1957) (suits for a violation of a collective bargaining agreement are governed solely by federal law).

## II.

■ Plaintiffs' argument that the state fraud principles upon which they rely cannot be preempted because they are so "deeply rooted in local feeling" has been rejected by all the foregoing decisions.

Plaintiffs rely on *San Diego Building Trades Council, Local 2020 v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), to bolster their argument that state fraud principles cannot be preempted. However, the standards set out in *Garmon,* which engage in a "balancing of state and federal interests," are irrelevant to the different question presented here.

As the Supreme Court in *Lueck* explained, the

> so-called *Garmon* pre-emption involves protecting the primary jurisdiction of the NLRB and requires a balancing of state and federal interests. The present tort suit would allow the State to provide a rule of decision where Congress has mandated the federal law should govern. In this situation the balancing of state and federal interests required by *Garmon* preemption is irrelevant, since Congress, has provided that federal law must prevail. 105 S.Ct. at 1912–13.

In conclusion, there is nothing in the facts of this case or federal labor law that supports reversal of the district court's judgment.

## III.

The district court correctly granted defendant's motion for summary judgment because plaintiffs' state law tort claim is preempted by Section 301 of the LMRA, and plaintiffs failed to bring this action within the six month statute of limitations period. The judgment of the district court is

AFFIRMED.