**Clark GREGORY, Plaintiff,**

**v.**

**SIMON BROTHERS, INC., Defendant.**

**No. S 83–504.**

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 11, 1986.

---

Daniel H. Pfeifer, South Bend, Ind., for plaintiff.

Gregory L. Kelly, South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before the court on the defendant's Simon Brothers, Inc., Motion for Summary Judgment, filed on April 7, 1986, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Jurisdiction is alleged under 28 U.S.C. § 1337 and 28 U.S.C. § 1441(b). The plaintiff, Mr. Clark Gregory, filed a complaint on October 23, 1983, in St. Joseph Superior Court, in St. Joseph County, Indiana, alleging a breach of a collective bargaining agreement. The defendant filed a petition to remove the case to federal jurisdiction pursuant to 28 U.S.C. § 1441(b). The removal petition was premised on the fact that Section 301 of the Labor Management Relations Act (LMRA) authorizes a party to bring a suit "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..., in any district court of the United States having jurisdiction of the parties ..." 29 U.S.C.A. § 185 (1978). The defendant, on January 12, 1984, filed a motion for summary judgment. On March 9, 1984, the plaintiff was given until April 9, 1984, to respond to the defendant's motion for summary judgment. The court, after receiving no response from the plaintiff granted the defendant's motion for summary judgment and granted the plaintiff leave to file an amended complaint. The amended complaint, filed on November 1, 1984, alleged defamation claims, and on November 13, 1984, the defendant answered. At a pretrial conference, held on May 17, 1985, the parties were given until September 3, 1985, to complete discovery and until October 1, 1985, to file any and all motions for summary judgment. The court held a pretrial conference on March 3, 1986 and ordered the parties to file and exchange briefs addressing the subject matter jurisdiction of this case. In the pending motion the defendant addressed the subject matter jurisdiction of the case. The plaintiff, on May 12, 1986, filed a response to the pending motion and the defendant, on May 20, 1986, filed a reply.

A summary of the pertinent facts are necessary to analyze the subject matter jurisdiction and the propriety of summary judgment. The defendant and Teamsters Local Union # 364 (Union) had a collective bargaining agreement which covered the period from May 14, 1980, through May 13, 1983. All incidents pertinent to this case occurred during the pendency of that collective bargaining agreement. Article 6 of the "Articles of Agreement" states *inter alia:*

The employer shall not discharge or suspend any employee without just cause

... Discharge must be by proper written notice to the employee and the union affected ... Any employee may request an investigation as to his discharge or suspension.

Further, Schedule "B" of the collective bargaining agreement includes the "Uniform Rules and Regulations." Paragraph 7(d) of Schedule "B" states that a driver is "subject to discharge" for a "refusal of run (truck drivers) of refusal to follow a direct order (warehouse)." The plaintiff was a member of the collective bargaining unit at all times pertinent to this case and was discharged for a refusal to take a run, and insubordination.

The plaintiff began working for the defendant in 1977, and he became a member of the Union within the time required by the agreement in force at that time. During his employment, the plaintiff became familiar with the method of job assignment or reassignment utilized by the defendant. The defendant's truck drivers are assigned "runs" each day they work. A run is a specific route between the defendant's warehouse and a specific city i.e. Kalamazoo, Michigan or Fort Wayne, Indiana. A run may include several stops, for delivery, along the designated route. Generally, once the driver arrives at the specific city and the last delivery is made the driver returns to the defendant's warehouse.

The "shift supervisor" was apparently responsible for assigning or reassigning the defendant's drivers to specific runs.

The plaintiff had often been assigned either the Chicago, Illinois or the Kalamazoo, Michigan run. On November 16, 1982, the plaintiff was originally assigned the Kalamazoo, Michigan run. However, due to some illness another driver was unable to take the Fort Wayne, Indiana run. The shift supervisor reassigned the plaintiff to take the Fort Wayne run. The defendant alleges and it is uncontradicted, that the reason for reassigning the plaintiff was because the available substitute driver was familiar with the Kalamazoo run and the plaintiff was familiar with the Fort Wayne run. The plaintiff told the shift supervisor that he would not take the Fort Wayne run and subsequently took the truck for the Kalamazoo run and completed that run.

Based on the incident which occurred on November 16, 1983, Mr. Charles Dewitt, Assistant Operations Director for Simon Brothers, Inc., wrote a letter dated November 17, 1982, to the plaintiff suspending the plaintiff "without pay, until further notice." The reasons for the suspension were a refusal of a run and insubordination. Carbon copies of the November 17, 1982 letter were sent to: Teamsters Union # 364; Warren Korkhouse, a union steward; Don T. Simon, co-owner of Simon Brothers, Inc.; and Homer Kovacs, who "was in management at Simon Brothers." The plaintiff does not dispute that all of the recipients of that letter were involved in the disciplinary procedure prescribed in the collective bargaining agreement. In addition, on November 17, 1982, Mr. Dewitt met with the plaintiff. At that time Mr. Dewitt delivered the letter and told the plaintiff that he was suspended for refusal of a run and insubordination. The plaintiff was not certain if Mr. Dewitt actually made the alleged defamatory statements during that meeting. The persons present at that meeting, in addition to Mr. Dewitt and the plaintiff, were Mr. Louis Beers, the acting union steward on the evening shift; Mr. Mike Burke, warehouse foreman for the evening shift; Mr. Don Kennedy, union business agent; Mr. Don Simon and Mr. Warren Korkhouse. The plaintiff does not dispute that the persons present at that meeting had a job-related interest in being present at that meeting. In a letter dated November 23, 1982, Mr. Dewitt notified the plaintiff that his employment with the defendant was terminated due to the plaintiff's refusal to take a run and insubordination. Carbon copies of that letter were sent to the Union, Mr. Korkhouse, Mr. Kovacs, and Mr. Don Simon. The plaintiff does not dispute that those recipients had a job-related interest in receiving that information.

Following his termination, the plaintiff filed a grievance as prescribed under the

collective bargaining agreement.[1] The company denied the grievance. Subsequently, a meeting, as provided for in the collective bargaining agreement, was scheduled. During that meeting, which took place on December 1, 1982, in response to questions, Mr. Dewitt stated that the plaintiff had refused to take a run and had been insubordinate. Present at that meeting were Mr. Don Simon, Mr. Dewitt, Mr. Kennedy, and Mr. Korkhouse. The plaintiff does not dispute that those people all had a job-related interest in hearing Mr. Dewitt's responses to questions asked during the grievance proceedings. The Union, on December 15, 1982, notified both the plaintiff and defendant that it would not seek arbitration of the plaintiff's grievance. Subsequently, the original complaint, in this case, was filed on October 23, 1983.

The defendant filed affidavits of Mr. Don Simon and Mr. Charles Dewitt. Those affidavits demonstrate that the defendant has not published or expressed the alleged defamatory language to any person other than those individuals already mentioned. Further, the plaintiff, in his deposition testimony, stated that he was unable to indicate any person other than those already mentioned who had heard or read the alleged defamatory language. The plaintiff also testified that he had informed his prospective employers that he had been discharged by the defendant, but that he believed the discharge was wrongful. In addition, both of the affidavits submitted by the defendant indicate that the defendant has never given an unfavorable recommendation of the plaintiff to prospective employers.

■ The first question posed by this case is whether the tort of defamation, under Indiana law, as applied in this case, "would frustrate the federal labor-contract

scheme established in [section] 301" of the LMRA. *See, Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). If application of the Indiana tort of defamation to this case would frustrate the scheme established by section 301 then the state law is preempted by the LMRA. *Accord, Id.; Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *see also, Gibson v. AT & T Technologies, Inc.*, 782 F.2d 686 (7th Cir.1986), *cert. denied,* —— U.S. ——, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986); *compare, Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966).

■ It cannot be presumed that Section 301 preempts all activity no matter how peripherally related to the federal labor-contract scheme. *Accord, Linn*, 383 U.S. at 59, 86 S.Ct. at 661. The facts in *Linn* are significantly different from this case. In that case, a libel claim was filed which arose from statements published during a union organizing campaign. The Supreme Court of the United States held that the specific activities complained of were peripheral in nature to activities covered under the LMRA. Therefore, the libel claim was not preempted by federal law. In this case the alleged defamatory statements were made as a direct result of procedures required by the collective bargaining agreement. Further, the specific language utilized in the written notices and during the grievance procedures is the express language of the collective bargaining agreement. In general, whenever a case requires a court to engage in analysis or interpretation of the collective bargaining agreement the case is controlled by federal law. *Allis-Chalmers*, 105 S.Ct. at 1911–12. That general rule may be limited by an analysis of whether the state tort "confers

1. 
   ARTICLE 7
   ARBITRATION & GRIEVANCE PROCEDURE
   Section 1. In the event of any grievance or complaint arising under and during the terms of this Agreement, an effort shall be made to adjust same in an amicable manner between the Employer and the Union. In the event that such grievance and complaint cannot be settled in this manner the question may be submitted by either party for arbitration as hereinafter provided. There shall be no legal proceeding of any kind before all means of settlement provided herein are exhausted.
   Section 2. Either party may demand arbitration ...

**1256**

a nonnegotiable state law right on employers or employees independent of any right established by contract." *Id.*, at 1912.

█ In this case, the allegations of defamation are inextricably bound to the requirements placed on the employer by the collective bargaining agreement. The collective bargaining agreement provides for discharge for "refusal of run", requires "written notice", and provides for grievance procedures. In *Allis-Chalmers v. Lueck* the Court held that "A state rule that purports to define the meaning or scope of a term in a contract suit therefore is preempted by federal labor law". *Allis-Chalmers*, 105 S.Ct. at 1911. Any resolution of this case under a state tort theory would require the definition and interpretation of the scope of the terms of the collective bargaining agreement.

█ The court is not bound by the plaintiff's characterization of his claim in state tort language. *Accord, Gibson*, 782 F.2d at 688; *Oglesby v. RCA Corp.*, 752 F.2d 272, 277 (7th Cir.1985). Although the language of the amended complaint expressed a claim for defamation, the amended complaint is substantively the same as the original complaint which alleged a breach of the collective bargaining agreement. Therefore, in this case, the state tort of defamation is preempted by Section 301 of the Labor Management Relations Act, and this court has subject matter jurisdiction.

To prevail, the party seeking summary judgment has the burden of establishing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2552, 81 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Backes v. Valspar Corp.*, 783 F.2d 77 (7th Cir.1986); *Janowiak v. Corporate City of South Bend*, 750 F.2d 557 (7th Cir.1984). A material question of fact is a question which will be outcome-determinative of an issue in that case. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160 (7th Cir.1984); *Egger v. Phillips*, 710 F.2d 292 (7th Cir.1983) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262

(1983). Any reasonable inferences to be drawn from the facts presented must be viewed in a light most favorable to the non-moving party. *Korf v. Ball State University*, 726 F.2d 1222 (7th Cir.1984). In addition, conclusory statements made in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact. *First Commodity Traders v. Heinhold Commodities*, 766 F.2d 1007 (7th Cir.1985), citing, *Hall v. Printing and Graphic Arts Union*, 696 F.2d 494 (7th Cir.1982). Furthermore, in *Celotex* the Supreme Court of the United States held that:

> The language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex*, 106 S.Ct. at 2552.

█ One of the elements essential to the plaintiff's case is the timely filing of his complaint. The statute of limitations for claims under Section 301 is six months. *Del Costello v. Teamsters*, 462 U.S. 151, 170, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983); *Richards v. Local 134, International Brotherhood of Electrical Workers*, 790 F.2d 633 (7th Cir.1986); *Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees*, 782 F.2d 674 (7th Cir.1986); *Hull v. Local 414 of International Brotherhood of Teamsters*, 601 F.Supp. 869 (N.D.Ind.1985); *Hardesty v. Essex Group, Inc.*, 550 F.Supp. 752 (N.D.Ind.1981). A claim under Section 301 accrues when the decision is final. Finality varies from case to case depending upon the specific grievance procedures required under the collective bargaining agreement. See *Del Costello*, 462 U.S. at 172, 103 S.Ct. at 2294–95; *Freeman v. Local Union No. 135 Chauffeurs, Teamsters, Warehousemen and Helpers*, 746 F.2d 1316 (7th Cir. 1984); *Hull v. Local 414 of International Brotherhood of Teamsters*, 601 F.Supp.

869 (N.D.Ind.1985); *Hardesty*, 550 F.Supp. at 760–61. In this case, the collective bargaining agreement provided for a grievance procedure. The company denied the plaintiff's grievance and notified both the Union and the plaintiff of that decision on December 6, 1982. Once a decision on the grievance is reached "Either party [Union or employer] may demand Arbitration." By a letter dated December 15, 1982, the Union notified the plaintiff and defendant that it would not seek arbitration of the plaintiff's grievance. The original complaint, in this case, was filed on October 23, 1983, more than ten (10) months after the plaintiff's claim accrued. Therefore, the plaintiff's claim is barred by his failure to file within the applicable statute of limitations.

A second basis, which the defendant argues, for barring the plaintiff's claims is under a theory of absolute or unqualified privilege. The theory is that since Congress intended to encourage parties to agree to exclusive non-judicial grievance and arbitration procedures and to "feel free to express their respective contentions as to pertinent facts and the issues involved frankly, and to strongly support their positions with respect to the controversy made during those procedures are protected by an absolute privilege." *Hasten v. Phillips Petroleum Co.*, 640 F.2d 274 (10th Cir.1981); *General Motors Corporation v. Mendicki*, 367 F.2d 66 (10th Cir.1966); *Hull v. Central Transport, Inc.*, 628 F.Supp. 784 (N.D.Ind.1986).[2] The Court of Appeals for the Seventh Circuit has not adopted the theory of absolute privilege for statements made during procedures required by the collective bargaining agreement. In light of the finding that the plaintiff's defamation claims are preempted by Section 301 of the LMRA this judge need not decide the validity or application of an absolute privilege in the context of this case.

**2.** None of the traditional indicia associated with individuals granted an absolute privilege are present during disciplinary, grievance, or arbitration procedures under a collective bargaining agreement. The extraordinary relief of an abso-

Accordingly, and for all the above reasons, it is the ORDER of the court that the defendant's, Simon Brothers, Inc., Motion for Summary Judgment be, and is hereby, GRANTED. SO ORDERED.

lute privilege seems unnecessary where, as here, fear of reprisals, which might decrease vigorous advocacy, is removed by the preemption of the defamation claims by Section 301 of the Labor Management Relations Act.