Donald Joseph CLIFT, et al.,
Plaintiffs-Appellants,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), et al., Defendants-Appellees.

No. 85–1802.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 18, 1987.*

Decided May 6, 1987.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). All parties have filed statements concerning the necessity of oral argument. Upon consideration of those statements, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record.

George Franklin Hinkle, Indianapolis, Ind., for plaintiffs-appellants.

W.C. Blanton, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendants-appellees.

Before BAUER, Chief Judge, CUMMINGS and MANION, Circuit Judges.

**PER CURIAM.**

Four named plaintiffs brought a class action against their union and employer alleging violations of section 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185, and sections 101 and 102 of the Labor Management Reporting and Disclosure Act, 1959 (LMRDA), 29 U.S.C. §§ 411 & 412. In a subsequent motion, they sought leave to add a claim that they were denied due process of law in violation of the Fifth Amendment. On defendants' motions for summary judgment, the district court held that the statutory claims were time-barred. The court denied leave to amend on the ground that no government action was involved. The court did not certify the class action because it found that question moot since all of plaintiffs' claims were being dismissed. The district court entered judgment for the defendants and plaintiffs appeal. For the reasons below, we affirm.

I

Both the plaintiffs and the defendants moved for summary judgment. In addition to numerous affidavits, the parties provided transcripts of testimony from a two-day hearing on a preliminary injunction. For our purposes, though, a brief description of the facts will suffice. Where necessary, additional facts will be brought out in our discussion of the applicable law.

Plaintiffs are employed by International Harvester Company (Harvester) at its engine assembly plant in Indianapolis. They are members of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and Local 98 of the UAW.[1] In late 1981 and early 1982, the UAW and Harvester entered into early negotiations for possible concessions on a 1980 collective bargaining agreement that was not to expire until October 1982. The reason for the early negotiations was Harvester's precarious financial condition. A tentative agree-

---

1. When referring to the International we will use the term "UAW." When referring to Local 98, we will use the term "Local." The term "Union" will be used when it is unnecessary to distinguish the International and Local.

ment was reached at the end of April 1982. At the time, plaintiffs, and the class of about 350 employees they sought to represent, were on layoff from the Indianapolis plant, most for more than six months. The Local was informed that a tentative agreement was possible and notices were distributed at the plant concerning a meeting on May 2 regarding the contract negotiations. As it turned out, that was a meeting to explain and vote on the tentative contract. The Local did not consider the laid-off employees to be members in good standing entitled to vote on the contract (an interpretation contested by plaintiffs), so no special notices were sent to the laid-off employees, although they were not excluded from attending. The local media was told of the meeting, but advance reporting of the meeting by the media was apparently minimal if at all.

The new contract was approved by the Local by a vote of 235 to 129. The contract was approved nationwide by a vote of 7086 to 3949 and went into effect on May 3, 1982. The only provision relevant to the present case is the creation of a Master Recall List. The new contract provided for the keeping of a national list, by seniority, of eligible persons on layoff. If a particular Harvester operation had no local employees on layoff, those on the Master List were eligible to fill any job openings. Once hired at a new operation, that person took his seniority from his prior bargaining unit with him and thus could have higher seniority than persons who had worked at that particular operation for a longer period of time. The parties disagree on whether or not this new provision was significantly different from the prior contract and on whether the revision could be made nationally in contrast to the 1980 contract which provided for local arrangements on individual plant closings.

At the May 2 ratification meeting, the Local members present were told about the provision for a Master Recall List, but were advised that it would probably not affect them because all the laid-off Local employees had first to be recalled and that did not appear likely. As it turned out, though, all the laid-off employees at the

Indianapolis plant were subsequently recalled. On March 7, 1983, the first of several hundred transferees began work at the Indianapolis plant and were placed on the seniority list above some of the employees who had worked at the Indianapolis plant prior to March 7.

On September 6, 1983, more than seventeen months after the contract ratification but just under six months after the first transferee arrived, plaintiffs filed a complaint in the district court. They complained that the Master Recall provision had been improperly ratified because of insufficient notice to laid-off employees, failure to allow the laid-off employees to vote, the secrecy of the negotiations, and the alleged misrepresentation that Master Recall would not affect employees at the Indianapolis plant. The claims were pursuant to the LMRA and LMRDA. After plaintiffs' preliminary injunction was denied, both sides moved for summary judgment. The district court held that a six-month statute of limitations applied and that the cause of action accrued in May 1982 when the new contract was ratified. Plaintiffs' claims were therefore time-barred and it was unnecessary for the court to consider other grounds for dismissal. The court also denied leave to add the Fifth Amendment due process claim because there was no government action that would bring that Amendment into play. The district court found the question of class certification to be moot. Judgment was entered for the defendants and plaintiffs appeal.

## II

We first consider plaintiffs' "argument" that the district court has failed to rule on the question of certification of this action as a class action. Plaintiffs' entire "argument" on this issue consists of the following:

III. THE DISTRICT COURT ERRED IN NOT GRANTING PLAINTIFFS' MOTION THAT A CLASS ACTION SUIT BE MAINTAINED.

The Plaintiffs originally filed this action as a class action on September 6,

1983. Plaintiffs subsequently filed a "Motion For Determination By Order That a Class Action be Maintained" on December 5, 1983. In the year and nine months that has passed since its filing, the district court has failed to rule on this Motion.

Plaintiffs' Brief at 39.

■ This does not qualify as an argument; ordinarily, we would not consider the issue at all. *See Bonds v. Coca Cola Co.*, 806 F.2d 1324, 1328 (7th Cir.1986), and the cases cited therein. *See also* Fed.R. App.P. 28(a)(4); *Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit* 41–42 (1984 ed.). But we cannot ignore this issue; if plaintiffs accurately characterized the facts, we might have no jurisdiction over the appeal. *Compare Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1034 n. 1 (7th Cir.1987); *Glidden v. Chromalloy American Corp.*, 808 F.2d 621 (7th Cir.1986). We must raise jurisdictional issues *sua sponte*, even if not raised by the parties. *See Arch Mineral Corp. v. Director, OWCP*, 798 F.2d 215, 217 (7th Cir.1986). Plaintiffs, however, did not fully and accurately state the facts in their "argument" and an accurate portrayal of the posture of this case is necessary for a proper resolution of the case.

■ The present case is distinguishable from *Glidden*. In *Glidden*, the district court granted a summary judgment motion for the defendants and dismissed the complaint. With the parties' agreement, the district court declined to decide if the action should have been certified as a class action and the court expressly withheld reaching a decision on class certification until after an appeal of the grant of summary judgment was decided. *See id.*, 808 F.2d at 623. We held that we had no appellate jurisdiction under 28 U.S.C. § 1291 because there was no final judgment. *Id.* at 628. There was no interlocutory appeal under 28 U.S.C. § 1292(b), *id.* at 623; no partial final judgment under Fed.R.Civ.P. 54(b), *id.* at 623–24; nor was there an implicit granting, denial, or withdrawal of the class certification issue, *id.* at 624–27. In contrast, in

the case now before us, the district court made an express ruling on the question of class certification: the court ruled that the certification question was moot. This was not a ruling on the merits of the class certification question which is what plaintiffs apparently still desire, but it is still a ruling on the question. Since there has been a ruling declining to grant class certification and the district court entered a judgment for the defendants, there is a final judgment which we have jurisdiction to review. *Cf. Gomez*, 811 F.2d at 1034 n. 1.

■ The district court may have been incorrect when it determined that the class certification question was moot. *Compare id.; Glidden*, 808 F.2d at 627; *Napier v. Gertrude*, 542 F.2d 825, 827 (10th Cir. 1976), *cert. denied*, 429 U.S. 1049, 97 S.Ct. 759, 50 L.Ed.2d 765 (1977). But, since that issue has not been properly raised by the plaintiffs on appeal, we will not consider whether we should remand this case for a determination of the merits of the class certification question. Since we uphold the district court's decision on the statute of limitations issue, we also let stand the decision on the unargued (at the appellate level) issue of class certification. *Cf. Gomez*, 811 F.2d at 1034 n. 1. Additionally, since the district court never certified this case as a class action, we treat this appeal as an appeal of the four named plaintiffs' individual claims. *Cf. Simmons v. Drew*, 716 F.2d 1160, 1161 (7th Cir.1983); *Case & Co. v. Board of Trade of City of Chicago*, 523 F.2d 355, 360 (7th Cir.1975); *Roberts v. American Airlines, Inc.*, 526 F.2d 757, 762 (7th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); *Lagorio v. Board of Trade of City of Chicago*, 529 F.2d 1290, 1291 (7th Cir.), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3171, 49 L.Ed.2d 1187 (1976). *Cf. also Glidden*, 808 F.2d at 624–27.

## III

The provisions of the LMRA and LMRDA under which plaintiffs brought their claims do not have an express statute of limitations. Relying on *DelCostello v.*

*International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (LMRA), *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984) (LMRA), and *Vallone v. Local 705, International Brotherhood of Teamsters,* 755 F.2d 520 (7th Cir.1984) (per curiam) (LMRDA), the district court borrowed the six-month limitation period from section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b). Plaintiffs argue that the proper limitation period to borrow is the most analogous state limitation period, in particular the two-year period for oral contract claims under Indiana law. *See, e.g., International Union, United Automobile Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *International Union of Elevator Constructors v. Home Elevator Co.,* 798 F.2d 222 (7th Cir. 1986). Alternatively, plaintiffs argue that even if the six-month limit applies, the cause of action accrued when the first transferee arrived on March 7, 1983 and therefore the complaint was timely filed within the six-month period. We first consider which limitation period applies to this case.

### A

In *Hoosier,* a union brought suit under § 301 of the LMRA for the employer's failure to pay accumulated vacation pay as required by the collective bargaining agreement between the union and employer. That action was "essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action resembles an action for breach of contract cognizable at common law." 383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7. The Supreme Court decided that analogous state law should determine the appropriate statute of limitations, *id.* at 704–05, 86 S.Ct. at 1112–13, which in that case was Indiana's

six-year period for claims in which the contract is not entirely in writing. *Id.* at 707, 86 S.Ct. at 1114. The Court expressly reserved its judgment as to whether other types of § 301 suits might require the application of different rules of timeliness. *Id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7. Seventeen years later, the Court decided that in "hybrid" § 301 suits, involving both employer violations of the collective bargaining agreement and the union's failure to fairly represent the complaining employee, the appropriate limitation to borrow is the six-month limitation period for unfair labor practices found in § 10(b) of the NLRA. *DelCostello,* 462 U.S. at 155, 103 S.Ct. at 2285. *Hoosier* was distinguished as "a straightforward suit under § 301 of the [LMRA] for breach of a collective bargaining agreement by an employer. Unlike the present cases, *Hoosier* did not involve any agreement to submit disputes to arbitration, and the suit was brought by the union itself rather than by an individual employee." *DelCostello,* 462 U.S. at 162, 103 S.Ct. at 2289. *Hoosier* also did "not involve 'those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it.' " *DelCostello,* 462 U.S. at 162–63, 103 S.Ct. at 2289 (quoting *Hoosier,* 383 U.S. at 702, 86 S.Ct. at 1111). Additionally, in *Hoosier* there was a closely analogous state cause of action. *DelCostello,* 462 U.S. at 163, 165, 103 S.Ct. at 2289, 2291. *See also Home Elevator,* 798 F.2d at 225–26 (comparing *Hoosier* and *DelCostello* ). In a recent case, we held that *Hoosier's* approach of borrowing the most closely analogous state limitation period continues to be the general rule even after *DelCostello. Home Elevator,* 798 F.2d at 223. Plaintiffs argue that their claims are closer to the straightforward breach of contract claims of *Hoosier* and *Home Elevator* than to the hybrid claims of *DelCostello* [2] and therefore the appropriate limitations

---

**2.** We note that *DelCostello* is applied retroactively, so it does not matter that plaintiffs' claims accrued and became time-barred before

*DelCostello* was decided. *See Bonds,* 806 F.2d at 1326.

period is Indiana's two-year period for claims based on oral contracts.[3]

■ We do not find that plaintiffs' claims are mere straightforward breach of contract claims. It is not merely claimed that Harvester performed a breach by misapplying the collective bargaining agreement. Instead, it is claimed that Harvester and the Union improperly entered into a new contract. Harvester's alleged misconduct was primarily that it entered into a new agreement with persons not properly authorized to do so. (It is also alleged that Harvester improperly participated in secret negotiations.) That is not a straightforward breach of contract claim like *Hoosier* where the employer failed to pay accumulated vacation pay allegedly due to terminated employees under the collective bargaining agreement. *See id.*, 383 U.S. at 698, 86 S.Ct. at 1109. Nor is it like *Home Elevator*, where the employer allegedly failed to pay the proper wage rate under the collective bargaining agreement. *See id.*, 798 F.2d at 224. Instead, the present case involves the employer acting properly under the terms of a collective bargaining agreement with an allegation that the collective bargaining agreement is not the one to be followed. Also, like *DelCostello*, but unlike *Hoosier* and *Home Elevator*, this is a suit by individual employees against both the employer and the union, not a suit merely against the employer by the union.

Plaintiffs try to distinguish *DelCostello* because their case does not involve a grievance nor arbitration for which the Union failed to provide adequate representation.

While it is true that this case does not involve "the private settlement of disputes under [the collective bargaining agreement]," which *DelCostello* involved, it does involve "the formation of the collective agreement"; both are "consensual processes that federal labor law is chiefly designed to promote." *Hoosier*, 383 U.S. at 702, 86 S.Ct. at 1111; *DelCostello*, 462 U.S. at 162–63, 103 S.Ct. at 2289. *DelCostello* cannot be distinguished simply because the Union's alleged improprieties arose during negotiations not during a grievance procedure. *See United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1270–71 (7th Cir.1985).[4] *Cf. Home Elevator*, 798 F.2d at 228 n. 5.

Additionally, we do not find a breach of contract claim to be closely analogous to the claims involved in the present suit. While it is possible that a state contract claim might involve questions of proper authority to enter into a contract, such contract questions are distinct from whether a union properly negotiated and ratified a contract under federal labor law. And the primary dispute in this case concerns whether the Union acted properly under federal laws controlling its decision-making processes. An unfair labor practice is a more closely analogous cause of action. *See United*, 756 F.2d at 1270–71. *See also DelCostello*, 462 U.S. at 170, 103 S.Ct. at 2293. Since this case involves a union's duties when negotiating a contract, an issue central to federal labor law, policy considerations favor a uniform statute of limi-

---

3. In supplemental briefs, the parties discuss whether *Gibson v. AT & T Technologies, Inc.*, 782 F.2d 686 (7th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986), controls the decision in this case. Defendants argue that it does and plaintiffs take the opposite view. It is true that *Gibson* involves a fact situation somewhat similar to the case now before us. However, the principal issue in *Gibson* was whether federal labor law preempted a state law fraud claim regarding the employer's alleged misrepresentations concerning pension benefits under the collective bargaining agreement. We held that the state claim was preempted by federal law. *Id.* at 688. The plaintiffs in that case still could have made a claim under § 301, but it was barred by the applicable six-month statute of limitations. That case is not controlling because the parties

apparently did not dispute that the six-month limitation period applied and therefore our opinion contains no discussion of why there is a six-month limitation period. *See id.* at 689. There is no argument in the present case that plaintiffs' claims are state law claims, not claims under federal labor law, so there is no preemption issue. Plaintiffs only argue that their federal claims are closely analogous to state breach of contract claims and therefore the state statute of limitations should be borrowed.

4. Although *United* was decided under the Railway Labor Act, the relevant rules are no different than those applied under § 301 of the LMRA. *See United*, 756 F.2d at 1270.

tations. *See United*, 756 F.2d at 1271; *DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294. We therefore conclude that the appropriate statute of limitations to apply to the LMRA claims is the six-month limitation period found in § 10(b) of the NLRA.

Plaintiffs also argue that their LMRDA claims should not have been subjected to the six-month limitation period. We have previously decided that the reasoning in *DelCostello* applies equally to both LMRA § 301 claims and claims under sections 411 and 412 of the LMRDA. *Vallone*, 755 F.2d at 521–22. For the same reasons that we hold a six-month limitation period to be applicable to plaintiffs' LMRA claims, we also hold that that period applies to the LMRDA claims.[5]

**B**

We have decided that the district court correctly determined that a six-month statute of limitations applies to plaintiffs' statutory claims. Plaintiffs still argue, however, that their claims were filed within the six-month period. Plaintiffs essentially make two distinct arguments by which their claims could be deemed to be timely. One is that the cause of action did not accrue until the problem actually was (or should have been) discovered. They argue discovery occurred when the transferees first arrived on March 7, 1983. The other argument is that the claim did not arise until the transferees arrived because that is when the injury first occurred, not when the contract was ratified. Both arguments fail.

■ The claims in this case concern the improper ratification of a collective bargaining agreement and the applicable statute of limitations is borrowed from § 10(b) of the NLRA. "Causes of action based on entry into collective bargaining agreements accrue, and section 10(b) starts to run, when the contract is signed." *United*, 756 F.2d at 1273. *Accord Metz*, 715 F.2d at 305; *Local 1424, International Association of Machinists v. NLRB*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). The claim does not wait to accrue until the time at which the contested provisions of the agreement are enforced. *Id.* It is also true, though, that the "limitation period begins to run '... when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violations].' " *Metz*, 715 F.2d at 304 (quoting *Hungerford v. United States*, 307 F.2d 99, 102 (9th Cir.1962)) (ellipsis and brackets in *Metz*). *Accord Vallone*, 755 F.2d at 522. Thus, plaintiffs' claims accrued when the collective bargaining agreement was entered into in May 1982, unless the existence of the new contract could not reasonably have been discovered until later and was not actually discovered by plaintiffs until later.

■ The discovery rule is an exception to the time-bar rules and plaintiffs bear the burden of proving they fell within the exception. *See Adkins v. International Union of Electrical Workers*, 769 F.2d 330, 335 (6th Cir.1985); *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir.1986); *Drazan v. United States*, 762 F.2d 56, 60 (7th Cir.1985); *Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir.1974). Plaintiffs make a

**5.** In their opening brief, plaintiffs conceded that *Vallone* was correctly decided, but argued that their particular LMRDA claim was not analogous to § 10(b) of the NLRA. In a supplemental brief, however, they appear to argue that the reasoning of *DelCostello* should not apply to LMRDA claims. They primarily rely on a recent case from the First Circuit, *Doty v. Sewall*, 784 F.2d 1 (1st Cir.1986). *Doty*, however, only involved a claim by a union member that his union improperly denied his transfer of membership. That claim did not concern the bargaining process nor any grievance with Doty's employer. While *Doty* includes general language as to why claims under the LMRDA should be distinguished from claims under § 301 of the LMRA, the decision is expressly limited to its facts. *See id.* at 4–5, 9. Also, a number of circuits are in accord with the conclusion we reached in *Vallone*. *See Adkins v. International Union of Electrical Workers*, 769 F.2d 330, 335 (6th Cir.1985); *Davis v. United Automobile Workers*, 765 F.2d 1510, 1514 (11th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1284, 89 L.Ed.2d 592 (1986); *Local 1397, United Steelworkers v. United Steelworkers*, 748 F.2d 180, 184 (3d Cir.1984). We will not reconsider our decision in *Vallone* applying *DelCostello* to claims under sections 411 and 412 of the LMRDA.

number of citations to the record in an attempt to show that at least some members of the Union did not discover the cause of action until March 7, 1983. But, as discussed in Section II above, the class action was denied and not appealed, so only plaintiffs' individual claims remain on appeal. Therefore, each individual plaintiff can only succeed if it was shown that he personally met the discovery exception. The experiences of the other potential class members are irrelevant to the resolution of this issue on appeal.

■ Initially, we note that plaintiffs appear to argue that they had to have been sent notice that would have satisfied constitutional due process requirements regarding notices sent for lawsuits or administrative procedures before they could be considered to have actual, or even putative, knowledge that their cause of action accrued. To the extent plaintiffs are making such an argument, we reject it. The cause of action accrued if they had knowledge through any means or if they should have known. *Cf. Metz*, 715 F.2d at 304; *Mull v. Arco Durethene Plastics, Inc.*, 784 F.2d 284, 288 (7th Cir.1986); *Hupp*, 500 F.2d at 996–97. Similarly, any failure on the part of the Union to follow its own notice procedures is irrelevant if plaintiffs had actual knowledge of or otherwise should have known of the new contract provision. The Union's notice procedure could only be relevant to the extent employees reasonably and detrimentally delayed seeking out information because they reasonably expected that the Union would have informed them of new contract revisions. *Cf. Hupp*, 500 F.2d at 997.

■ Although they did not attend the May 2 meeting, Donald Clift knew of the meeting in advance and Jesse Hatcher learned about it in the evening after the meeting had adjourned. Reasonable diligence would have enabled both of them to discover the existence and contents of the new agreement well before March 1983. Moreover, both were recalled in June 1982 and on September 15, 1982 copies of the new agreement were distributed to employees. Furthermore, Hatcher states in his affidavit that he learned about Master Recall when he was recalled in June 1982. Stanley Wilson's testimony shows he returned from recall on January 10, 1983 and immediately thereafter learned about Master Recall. Clift's, Hatcher's, and Wilson's claims clearly accrued more than six months before the suit was filed in September 1983.

■ The one other named plaintiff is Donald Romaine. He did not testify at the preliminary injunction hearing, but his affidavit was submitted by the plaintiffs. He received no advance notice of the May 2 meeting, but he did return from layoff in October 1982. He also states that "I had no opportunity to be aware of the impact of the Master Recall List on my personal seniority until Master Recall transferees began arriving at our plant in the spring and summer of 1983 and it became apparent that they were preempting me on the plant-wide seniority list." As we discussed above, transferees' effects on a plaintiff's seniority did not determine when the claims accrued; entry into the new agreement was the relevant event. Romaine's affidavit is silent regarding when he learned of the existence of the new agreement. Romaine therefore failed to meet his burden of showing that he satisfied the discovery exception to the May 1982 accrual date. *Cf. Bonds*, 806 F.2d at 1328; *Hupp*, 500 F.2d at 996; *Adkins*, 769 F.2d at 335. Additionally, the affidavit shows that Romaine returned to work in October 1982. Where there is no evidence that the contents of the contract were kept hidden from him, within the relevant time period a reasonably diligent person should know the contents of the contract he is working under. *Cf. Metz*, 715 F.2d at 304. Furthermore, the record shows that the signing of the new agreement, including specific reference to the Master Recall List, was well publicized in the Indianapolis newspapers. If Romaine acted with reasonable diligence, he should have known of the existence and contents of the new agreement more than six months before this suit was filed.

The LMRA and LMRDA claims were time-barred for all four plaintiffs.

## C

Plaintiffs also argue that the district court should have permitted them to amend their complaint to add a claim pursuant to the Fifth Amendment. The district court denied leave to amend on the ground that the claim lacked merit. We agree. Absent the requisite governmental action, there can be no claim for a denial of constitutional due process. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350–51, 354, 95 S.Ct. 449, 453–54, 455, 42 L.Ed.2d 477 (1974); *Anderson v. National Railroad Passenger Corp.*, 754 F.2d 202, 204–05 (7th Cir.1984) (per curiam); *Price v. International Union, United Automobile Workers*, 795 F.2d 1128, 1130–33 (2d Cir. 1986), *petition for cert. filed*, 55 U.S.L.W. 3476 (U.S. Dec. 23, 1986) (No. 86–1055); *Kolinske v. Lubbers*, 712 F.2d 471, 474–80 (D.C.Cir.1983). *Compare Beck v. Communications Workers of America*, 776 F.2d 1187 (1985), *aff'd on other grounds*, 800 F.2d 1280 (4th Cir.1986) (en banc) (per curiam), *cert. granted*, —— U.S. ——, 107 S.Ct. 2480, 96 L.Ed.2d 372 (1987).

## IV

For the reasons given above, we affirm the judgment of the district court.

AFFIRMED.